## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEAN MERIZIER, | : |
| Plaintiff | : Civil Action |
| | : |
| v. | : |
| | : |
| WAL-MART STORES EAST, L.P., & | : |
| WALMART, INC., | : |
| Defendants | : December 17, 2025 |

## COMPLAINT

1.      This is an action for racial discrimination arising from Defendant's false accusation of theft, public humiliation, unlawful detention, and two-year ban of Plaintiff from all Walmart stores, despite clear evidence that Plaintiff had engaged in legitimate retail transactions. Plaintiff brings this action pursuant to 42 U.S.C. § 1981, Connecticut General Statutes § 46a-64, and Connecticut common law.

2.      On December 5, 2024, Plaintiff, a Black man of Haitian origin, visited the Walmart store in Lisbon, Connecticut to purchase food, clothing, and other items. After completing multiple legitimate transactions—all of which were subsequently verified by state benefit program records and Walmart's own documentation—a Walmart supervisor falsely accused Plaintiff of theft, publicly humiliated him, summoned state troopers, detained him for approximately two to three hours, and banned him from all Walmart locations for two years.

3.      The supervisor's conduct was motivated by racial animus, as evidenced by his hostile demeanor, his comment that Plaintiff was "lucky there's no cop behind me," his persistent accusations despite documentary evidence of Plaintiff's innocence, and his treatment of Plaintiff in a manner that would not have been imposed on a white customer under similar circumstances.

4.      Plaintiff Jean Merizier is a Black United States citizen of Haitian national origin. Plaintiff was born in Haiti, immigrated to the United States in 2013, and became a naturalized U.S. citizen in 2018. Plaintiff resides at 75 Sachem Street, Norwich, Connecticut.

5.      Defendant Walmart, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business at 702 SW 8th Street, Bentonville, Arkansas. Defendant owns and operates retail stores throughout the United States, including the Walmart store located in Lisbon, Connecticut (the "Lisbon Walmart"). Defendant Wal-Mart Stores East, L.P., acted as an agent of Defendant Walmart, Inc. in operation of the Lisbon Walmart. At all times relevant to this Complaint, Defendants acted through their agents, servants, and employees, including the supervisors and employees present at the Lisbon Walmart on December 5, 2024.

6.      This Court has original jurisdiction over Plaintiff's claims arising under 42 U.S.C. § 1981 pursuant to 28 U.S.C. § 1331.

7.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same case or controversy as Plaintiff's federal claims.

8.      Plaintiff has exhausted his administrative remedies with respect to his claims under Connecticut General Statutes § 46a-64. Plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on or about January 2025. The CHRO subsequently issued a Release of Jurisdiction, permitting Plaintiff to pursue his claims in this Court.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

10.     Lisbon, Connecticut is a small town with a population of approximately 4,000

people. According to the most recent census data, Lisbon's population is 96.71% White, with

very few Black residents.

11.     At all times relevant to this Complaint, Defendant operated a retail store in

Lisbon, Connecticut that was open to the general public for the purchase of goods and services.

12.     On December 5, 2024, at approximately 1:00 p.m., Plaintiff and his cousin,

Ashley Jean, visited the Lisbon Walmart to purchase food, clothing, and other items.

13.     After completing his shopping, Plaintiff proceeded to the self-checkout area to

pay for his merchandise.

14.     Plaintiff conducted a first transaction using a food stamp card with cash assistance

benefits that had been provided to him by a family member. This transaction included a request

for $100 cash back.

15.     When no receipt was printed and no cash was dispensed following this

transaction, Plaintiff sought assistance from customer service, who summoned a supervisor.

16.     The supervisor informed Plaintiff that the purchase had processed correctly, but

that the cash back portion had not been deducted from the card.

17.     While at customer service, Plaintiff conducted a second transaction using Ms.

Jean's food stamp cash assistance card. This transaction included purchases and a request for

$500 cash back, which was properly dispensed.

18.     As this interaction was concluding, the supervisor made a hostile and threatening

remark to Plaintiff, stating: "You're lucky there's no cop behind me."

3

19.     This comment was unprovoked and unwarranted. Plaintiff had done nothing improper, and there was no legitimate basis for the supervisor to suggest that Plaintiff's conduct warranted police involvement.

20.     Upon information and belief, the supervisor's hostile comment was motivated by racial bias and reflected his discriminatory attitude toward Plaintiff based on Plaintiff's race, color, and national origin.

21.     Plaintiff and Ms. Jean then exited the store and walked to their vehicle. At that point, Plaintiff realized he had inadvertently failed to pay for four small cans of milk.

22.     Demonstrating his honesty and good faith, Plaintiff immediately returned to the store, located the customer service representative who had previously assisted him, and explained his oversight.

23.     Plaintiff then properly paid for these items in a third transaction.

24.     As Plaintiff was exiting the store a second time, the same supervisor confronted him at the self-checkout area.

25.     In front of other customers, the supervisor publicly accused Plaintiff of theft, demanding: "Give me the money you stole. Give me the $500 on Ashley's card you stole if you want no problem. If you give me the money you can go."

26.     Plaintiff produced his receipt as evidence of his legitimate transactions.

27.     The supervisor dismissed Plaintiff's receipt, claiming "it doesn't show in your system."

28.     Plaintiff, feeling humiliated by the public confrontation, requested to discuss the matter privately. The supervisor refused.

4

29.     Instead of affording Plaintiff basic dignity, the supervisor created a scene by following Plaintiff and pointing at him in front of other customers.

30.     Prior to this public confrontation, the supervisor had already contacted law enforcement without any legitimate basis for doing so.

31.     As Plaintiff re-entered the store, two Connecticut State Troopers were waiting inside.

32.     The officers escorted Plaintiff to a confined room with surveillance equipment. The space was so small it could barely accommodate the supervisor, two employees, two officers, Ms. Jean, and Plaintiff, forcing one officer to remain at the doorway.

33.     In this confined space, the supervisor repeated his accusation that Plaintiff had stolen money from Walmart.

34.     Plaintiff again presented his receipt, which the officers examined.

35.     The supervisor did not present any evidence to support his allegations of theft.

36.     To resolve the dispute, Plaintiff contacted customer service for the food stamp cash assistance program.

37.     After waiting on hold for over 45 minutes, a representative from the state program confirmed that all of Plaintiff's transactions were legitimate and properly recorded in the state's database.

38.     Despite this independent confirmation that Plaintiff had committed no wrongdoing, the supervisor remained defensive and hostile.

39.     The supervisor continued to insist that the transaction "was not in my system" and inappropriately questioned why Plaintiff had used Ms. Jean's benefit card.

40.     By this point, Plaintiff had been detained for approximately two to three hours.

41.     Despite finding no evidence of any wrongdoing by Plaintiff, the officers informed Plaintiff that he would be banned from all Walmart stores for two years.

42.     The officers and the supervisor attempted to have Plaintiff sign a document labeled as "shoplifting."

43.     Plaintiff refused to sign this document because he had not engaged in shoplifting or any other improper conduct.

44.     Plaintiff was informed that, regardless of whether he signed the document, he was prohibited from entering any Walmart store or Walmart parking lot for two years.

45.     Following the incident, Plaintiff obtained documentation of his transactions from the supervisor himself.

46.     This documentation showed five transactions totaling $101, which was consistent with Plaintiff's receipts and completely contradicted the supervisor's accusations.

47.     The existence of this documentation—which was in the supervisor's possession the entire time—demonstrates the supervisor's bad faith in accusing Plaintiff of theft and in detaining him.

48.     This documentation was never provided to the officers during Plaintiff's detention, which prevented the officers from recognizing the falsity of the supervisor's accusations.

49.     Twenty-seven days after the incident, Walmart deposited $400 back into Ms. Jean's cash assistance account. This deposit remains untouched.

50.     The fact that Walmart subsequently returned money to Ms. Jean's account is an admission that the transactions in question were not fraudulent and that Plaintiff had not stolen any money.

51.     Following the incident, Plaintiff contacted Walmart's corporate customer service regarding this matter.

52.     Rather than address Plaintiff's concerns or remedy the harm caused to him, Walmart advised Plaintiff to consult with an attorney.

53.     Upon information and belief, Defendant has a pattern and practice of subjecting Black customers to heightened surveillance, false accusations, and discriminatory treatment, particularly in stores located in predominantly white communities with few African American residents.

### COUNT ONE: VIOLATION OF 42 U.S.C. § 1981

54.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 53 as though fully set forth herein.

55.     Section 1981 of Title 42 of the United States Code provides that all persons within the jurisdiction of the United States shall have the same right to make and enforce contracts as is enjoyed by white citizens.

56.     Section 1981 protects the right of individuals to make and enforce contracts free from racial discrimination, including the right to make purchases at retail establishments.

57.     Plaintiff is a member of a racial minority. Plaintiff is Black and of Haitian national origin.

58.     Plaintiff entered the Lisbon Walmart to engage in retail transactions—that is, to make contracts for the purchase of goods.

59.     Defendant, through its supervisor and employees, intentionally discriminated against Plaintiff on the basis of his race, color, and national origin by:

a.  Subjecting Plaintiff to heightened scrutiny and suspicion not imposed on white
    customers;

b.  Making the hostile and threatening comment that Plaintiff was "lucky there's no
    cop behind me" during a routine customer service interaction;

c.  Falsely accusing Plaintiff of theft despite documentary evidence demonstrating
    that his transactions were legitimate;

d.  Publicly humiliating Plaintiff by accusing him of theft in front of other customers;

e.  Refusing to examine Plaintiff's receipts or other evidence of his innocence;

f.  Summoning law enforcement without reasonable cause;

g.  Detaining Plaintiff for approximately two to three hours;

h.  Banning Plaintiff from all Walmart locations for two years despite confirmation
    that his transactions were legitimate; and

i.  Treating Plaintiff in a manner that Defendant would not have treated a white
    customer under similar circumstances.

60.     Defendant's conduct impaired Plaintiff's ability to make and enforce contracts at
Defendant's retail establishments.

61.     Defendant's discriminatory conduct was intentional and motivated by racial
animus and bias.

62.     The supervisor's hostile comment, persistent accusations despite contrary
evidence, and refusal to afford Plaintiff basic dignity demonstrate discriminatory intent.

63.     As a direct and proximate result of Defendant's violations of 42 U.S.C. § 1981,
Plaintiff has suffered damages, including but not limited to emotional distress, humiliation,

embarrassment, inconvenience, loss of the ability to shop at Walmart stores, and other consequential damages.

64.    Defendant's conduct was willful, wanton, and in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

## COUNT TWO: VIOLATION OF CONNECTICUT GENERAL STATUTES § 46a-64 (PUBLIC ACCOMMODATIONS DISCRIMINATION)

65.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 64 as though fully set forth herein.

66.    Connecticut General Statutes § 46a-64(a)(1) prohibits denying any person "full and equal accommodations in any place of public accommodation, resort or amusement because of race, creed, color, national origin, ancestry, sex, gender identity or expression, marital status, age, lawful source of income, intellectual disability, mental disability, physical disability, including, but not limited to, blindness or deafness, status as a veteran or status as a victim of domestic violence."

67.    Connecticut General Statutes § 46a-64(a)(2) further prohibits discriminating, segregating, or separating on account of race, color, national origin, and other protected characteristics.

68.    Defendant's Lisbon Walmart store is a retail store open to the general public and is therefore a place of public accommodation within the meaning of Connecticut General Statutes § 46a-64.

69.    Defendant, through its supervisor and employees, denied Plaintiff full and equal accommodations by:

a. Falsely accusing him of theft based on racial stereotypes and bias, despite his own evidence that the accusation was false;

b. Subjecting him to public humiliation and scrutiny not imposed on white customers;

c. Detaining him for an extended period without legitimate justification;

d. Summoning law enforcement without reasonable cause;

e. Banning him from all Walmart locations for two years despite confirmation that his transactions were legitimate; and

f. Discriminating against him based on his race, color, and national origin.

70.     Defendant's conduct constitutes unlawful discrimination in a place of public accommodation in violation of Connecticut General Statutes § 46a-64.

71.     As a direct and proximate result of Defendant's violations of Connecticut General Statutes § 46a-64, Plaintiff has suffered damages, including but not limited to emotional distress, humiliation, embarrassment, inconvenience, loss of the ability to shop at Walmart stores, and other consequential damages.

**COUNT THREE: FALSE IMPRISONMENT**

72.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 71 as though fully set forth herein.

73.     Defendant, through its supervisor and employees, intentionally confined Plaintiff to a small room at the Lisbon Walmart for approximately two to three hours on December 5, 2024.

74.     Plaintiff was aware of and did not consent to this confinement.

75.     Defendant's confinement of Plaintiff was not privileged. Connecticut General Statutes § 53a-119a permits a merchant to detain a person suspected of shoplifting only where there is "reasonable grounds" for the detention and only "for a time sufficient to summon a peace officer to the premises."

76.     Defendant lacked reasonable grounds to suspect that Plaintiff had engaged in shoplifting. Plaintiff possessed receipts demonstrating that his transactions were legitimate. State records confirmed that Plaintiff's transactions were properly recorded. Defendant's own documentation, which was in the supervisor's possession, showed that Plaintiff's transactions were legitimate.

77.     Even if Defendant had initially possessed reasonable grounds for detention, the two-to-three-hour duration of Plaintiff's confinement exceeded the time necessary to investigate the matter. The state program representative confirmed within minutes that Plaintiff's transactions were legitimate, yet Defendant continued to detain Plaintiff.

78.     Defendant's extended detention of Plaintiff was motivated by racial animus and discriminatory intent.

79.     As a direct and proximate result of Defendant's false imprisonment, Plaintiff has suffered damages, including but not limited to emotional distress, humiliation, embarrassment, and inconvenience.

80.     Defendant's conduct was willful, wanton, and in reckless disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

**COUNT FOUR: DEFAMATION**

81.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 80 as though fully set forth herein.

82.    Defendant's supervisor made false statements of fact about Plaintiff to third parties, including:

     a.  Publicly accusing Plaintiff of theft in front of other customers at the Lisbon Walmart;

     b.  Stating that Plaintiff had "stolen" $500; and

     c.  Demanding that Plaintiff "give me the money you stole."

83.    These statements were false. Plaintiff did not steal any money. All of Plaintiff's transactions were legitimate, as confirmed by state records and Defendant's own documentation.

84.    Defendant's supervisor knew or should have known that these statements were false. The supervisor had access to documentation showing that Plaintiff's transactions were legitimate. Plaintiff presented receipts demonstrating his innocence. State records confirmed that Plaintiff's transactions were properly recorded.

85.    Defendant's false statements were defamatory because they accused Plaintiff of criminal conduct—specifically, theft.

86.    Defendant's false statements were published to third parties, including other customers present at the Lisbon Walmart and law enforcement officers.

87.    Accusations of theft are defamatory per se under Connecticut law.

88.     As a direct and proximate result of Defendant's defamation, Plaintiff has suffered damages, including but not limited to harm to his reputation, emotional distress, humiliation, and embarrassment.

89.     Defendant's conduct was willful, wanton, and in reckless disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

## COUNT FIVE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

90.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 89 as though fully set forth herein.

91.     Defendant's conduct toward Plaintiff was extreme and outrageous. Defendant's supervisor:

    a.  Made a hostile and threatening comment to Plaintiff during a routine customer service interaction;

    b.  Publicly accused Plaintiff of theft despite documentary evidence of his innocence;

    c.  Refused to examine evidence demonstrating Plaintiff's innocence;

    d.  Created a scene by following Plaintiff and pointing at him in front of other customers;

    e.  Summoned law enforcement without reasonable cause;

    f.  Detained Plaintiff in a confined space for approximately two to three hours;

    g.  Continued to accuse Plaintiff of theft even after state records confirmed his innocence;

    h.  Attempted to coerce Plaintiff into signing a document falsely labeling him as a shoplifter; and

13

      i.    Banned Plaintiff from all Walmart locations for two years despite confirmation

           that his transactions were legitimate.

92.     Defendant's conduct exceeded all bounds of decency tolerated by society.

93.     Defendant intended to cause, or recklessly disregarded the probability of causing, emotional distress to Plaintiff.

94.     As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including but not limited to humiliation, embarrassment, anxiety, and psychological harm.

### COUNT SIX: NEGLIGENT TRAINING AND SUPERVISION

90.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 94 as though fully set forth herein.

91.     Defendant owed a duty to Plaintiff to exercise reasonable care in the hiring, training, and supervision of its employees to prevent foreseeable harm to customers.

92.     Defendant breached this duty by failing to adequately train and supervise its employees, including the supervisor at the Lisbon Walmart, regarding:

      a.   Proper procedures for investigating suspected theft;

      b.   The impropriety of making public accusations of theft without reasonable cause;

      c.   The legal limits on detaining customers suspected of shoplifting;

      d.   Non-discriminatory treatment of customers of all races; and

      e.   Implicit bias and its effect on perceptions of customer behavior.

98.     Defendant knew or should have known that its employees, including the supervisor at the Lisbon Walmart, were inadequately trained and likely to engage in the type of discriminatory conduct to which Plaintiff was subjected.

99.     Upon information and belief, Defendant has received complaints about discriminatory treatment of Black customers at its stores and failed to take adequate remedial measures.

100.     As a direct and proximate result of Defendant's negligent training and supervision, Plaintiff suffered damages, including but not limited to emotional distress, humiliation, embarrassment, and inconvenience.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and award the following relief:

(a) Compensatory damages in an amount to be determined at trial;

(b) Punitive damages in an amount to be determined at trial;

(c) Attorneys' fees and costs incurred in this action;

(d) Pre-judgment and post-judgment interest; and

(e) Such other relief as the Court may deem just and proper.

PLAINTIFF

15

By:/s/Alexander T. Taubes
Alexander T. Taubes
470 James Street
Suite 007
New Haven, CT 06513
(203) 909-0048
alextt@gmail.com
Federal Bar No. ct30100